IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

JOE HAND PROMOTIONS, INC.,

Plaintiff,

vs.

CANTINA EL SOL, LLC, d/b/a DON GABY'S
SPORTS BAR, and JOSE MANUEL
ALFERES,

Defendants.

8:22–CV–113

MEMORANDUM AND ORDER ON
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT

Plaintiff Joe Hand Promotions, Inc. (JHP), filed suit against defendants Cantina El Sol, LLC, d/b/a Don Gaby's Sports Bar, and Jose Manuel Alferes (collectively, Defendants). JHP alleges that Defendants engaged in "cable piracy" by intercepting or receiving a communications service offered over a cable system without proper authorization in violation of 47 U.S.C. § 553.[1] *See* Filing 29-2 at 9. Specifically, JHP claims that it "was granted the exclusive right to license and distribute" two boxing events that took place in November and December 2021 and that "Defendants could have contracted with [JHP] and purchased authorization to exhibit each of" these events "for a fee." Filing 1 at 1, 3 (¶1, ¶8, ¶10). However, JHP asserts that through unlawful means and without authorization, license, or permission, Defendants exhibited both of these boxing events at a commercial establishment. Filing 1 at 3 (¶12). JHP therefore seeks damages, costs, and attorneys' fees pursuant to 47 U.S.C. § 553(c)(2)(B)–(C). *See* Filing 29-2 at 14–16.

---

[1] JHP alternatively pleaded that Defendants engaged in "satellite piracy" in violation of 47 U.S.C. § 605. Filing 1 at 4 (¶6). "A majority of courts have held that § 605 applies only to satellite or radio transmissions, not transmission by cable, and § 553 applies only to cable systems. Courts have not allowed parties to recover under both statutes." *Joe Hand Promotions, Inc. v. Peterson*, No. 18:12CV241, 2014 WL 824119, at *3 (D. Neb. Mar. 3, 2014) (internal citations omitted). JHP makes clear that its Motion for Summary Judgment is based solely on its cable piracy claim pursuant to 47 U.S.C. § 553. Filing 29-2 at 1 n.1.

1

This matter is now before the Court on JHP's Motion for Summary Judgment. Filing 29. Defendants did not file a timely brief in opposition to this Motion. *See* NECivR 56.1(b)(1)(A) (stating that a "party opposing a summary judgment motion must file a brief and separate statement of concise responses to the moving party's statement of material facts").[2] Instead, Defendants submitted a filing captioned "MOTION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT." Filing 32 at 1. Defendants later submitted an untimely filing captioned "MOTION TO EXTEND DEFENDANTS' RESPONSE DEADLINE." Filing 34 at 1. The Court takes the following actions.

First, Defendants' Motion to Deny Summary Judgment, Filing 32, lacks merit and is denied. Second, Defendants' Motion to Extend the deadline for responding to JHP's Summary Judgment Motion, Filing 34, is also denied because they have not shown that their failure to file this Motion on time is the result of excusable neglect. *See* Fed. R. Civ. P. 6(b)(1)(B). Third, JHP's Motion for Summary Judgment is granted in part and denied in part for the reasons explained in this Order. The Court awards JHP $1,500.00 in actual damages pursuant to 47 U.S.C. § 553(c)(3)(A)(i) based on the total amount in sublicensing fees that Defendants should have paid. The Court denies JHP's request for an additional $1,500.00 based on its speculative "estimate of total revenue" that Defendants might have recovered as a result of their violations. *See* Filing 29-2 at 15. To the extent JHP declines to further pursue the additional $1,500.00 in damages that this Court has declined to award at this time, JHP shall have 14 days from the date of this Order to file a fee affidavit so that the Court can determine the costs and reasonable attorneys' fees JHP may be entitled to recoup in accordance with 47 U.S.C. § 553(c)(2)(C). The Court has not yet determined whether or to what extent it will award attorneys' fees in this case. Defendants shall

---

[2] The Court will further address the untimely nature of Defendants' subsequent submissions (*see* Filing 34, Filing 36, and Filing 37) in the body of this Order.

have 14 days from the date that JHP files its fee affidavit to submit any response. The Court will then rule on the matter.

## I.  BACKGROUND

### A.  Preliminary Considerations and Resolutions

*1.  Defendants' Motion To Deny Summary Judgment, Filing 32, is Denied.*

JHP filed its Motion, accompanying brief, and supporting evidentiary materials—which collectively totaled 220 pages—on March 10, 2023. Filing 29. Defendants responded on March 27, 2023, with a filing captioned "MOTION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT." Filing 32. In substance, this filing totaled less than a page and did not address JHP's statement of material facts—let alone in the manner required by this Court's local rules. *See* NECivR 56.1(b)(1)(A)–(B). Instead, Defendants decided to attack a perceived procedural deficiency with the timing of JHP's Motion. *See* Filing 32 at 1. Specifically, they claim that JHP's Motion for Summary Judgment was untimely by a month according to the Case Progression Order. *See* Filing 32 at 1.[3] The Court understands Defendants to be grounding this Motion in Rule 56(b) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 56(b) (stating that the time for filing a summary judgment motion may be set by court order); *see also Wolf v. City of Aurora*, No. 08-05087–CV–SW–DGK, 2011 WL 1467669, at *2 (W.D. Mo. Apr. 18, 2011) (denying a motion for summary judgment because it was filed a little over a week after the court's scheduling order deadline for filing such motions had passed).

As JHP correctly points out, Defendants' timeliness argument is premised upon "an old deadline" that was subsequently extended by the Magistrate Judge for good cause shown following

---

[3] Defendants claim the Case Progression Order directed that all motions for summary judgment should be filed "on or before February 10, 2013." Filing 32 at 1. The Court understands this to be a scrivener's error that should have said "February 10, 2023." *See* Filing 14 at 2; Filing 32 at 4.

3

a planning conference on January 20, 2023. *See* Filing 33 at 1; Filing 25 (Text Minute Entry). The

Magistrate Judge set March 10, 2023, as the deadline for filing motions for summary judgment.

Filing 25 (Text Minute Entry). JHP's Motion for Summary Judgment was timely because it was

filed on March 10, 2023. Filing 29 at 2. Accordingly, Defendants' "Motion to Deny Plaintiff's

Motion for Summary Judgment," Filing 32, is denied.

    *2.   Defendants' Motion to Extend the Response Deadline, Filing 34, is Denied.*

    On April 10, 2023—five days after JHP pointed out that Defendants were relying on the

wrong deadline in arguing that the Summary Judgment Motion was untimely—Defendants filed a

half-page motion captioned "MOTION TO EXTEND RESPONSE DEADLINE." Filing 34. The

substance of this Motion, transcribed in full, states:

> COME NOW, the Defendants by and through their attorney of record, and
> if the Court finds that Plaintiff's Motion for Summary Judgment was timely filed,
> then Defendants pursuant to Federal Rule § 56(b)(2) request the Court grant them
> at least forty (40) days of response time to file their opposing Response and brief
> to Plaintiff's Motion for Summary Judgment because of the exceedingly large
> amount of documents attached to Plaintiff's Motion that need to be fully examined
> and researched for Defendants to properly respond and object to the cited materials.
>
> WHEREFORE, Defendants request this Court for an Order extending
> Defendants' [sic] enough time to Respond to Plaintiff's Motion for Summary
> Judgment.

Filing 34 at 1.[4]

    JHP responded to Defendants' Motion to Extend on April 12, 2023. Filing 35. Then, on

April 21, 2023—three weeks after the original deadline had passed and without any leave of the

---

[4] Defendants' reference to "Federal Rule § 56(b)(2)" is not clear. While there is a Federal Rule of Civil
Procedure 56(b), it does not contain any subparagraphs. *See* Fed. R. Civ. P. 56(b). However, Rule 56(d)(2) of the
Federal Rules of Civil Procedure provides, "If a nonmovant shows by affidavit or declaration that, for specified
reasons, it cannot present facts essential to justify its opposition, the court may . . . allow time to obtain affidavits or
declarations or to take discovery[.]" Fed. R. Civ. P. 56(d)(2). To the extent that Defendants move pursuant to Rule
56(d)(2), they have plainly failed to comply with it because they have not provided an affidavit or declaration along
with their Motion.

Court to do so out of time—Defendants went ahead and filed their "Resistance to Plaintiff's Motion for Summary Judgment" along with a supporting brief. Filing 36; Filing 37. In Defendants' untimely "Resistance to Plaintiff's Motion for Summary Judgment," Filing 37, they claim they "have no notes or remembrance of being advised that Plaintiff has a thirty (30) days [*sic*] extension to file his [*sic*] Motion for Summary Judgment[.]" Filing 37 at 1. The Court takes judicial notice of its own docket entries in this case as reflected on the CM/ECF system. *See Northport Health Servs. of Arkansas, LLC v. Ellis*, No. 2:20-CV-02021, 2020 WL 1846531, at *3 (W.D. Ark. Apr. 10, 2020) (recognizing a district court's authority to take judicial notice of its own docket). Having done so, the Court observes that the information contained in Filing 25 (Text Minute Entry) was electronically delivered to multiple e-mail addresses associated with Defendants' Counsel's firm.

The Court declines to grant Defendants' Motion to Extend (Filing 34). This decision means that the Court need not consider Defendants' untimely Resistance to Plaintiff's Motion for Summary Judgment. *See* Filing 36, Filing 37. However, having reviewed Defendants' untimely Resistance to Plaintiff's Motion for Summary Judgment, the Court notes that it would reach the exact same conclusion even if it were to excuse its late-filed nature and consider its merits. The Court will further explain the basis for this alternative holding near the conclusion of this Order.

Defendants' "Motion to Extend" was filed 10 days after Defendants' deadline for responding to JHP's Motion for Summary Judgment had already passed.[5] Thus, the Court may only extend the time for filing a response if Defendants "failed to act because of excusable neglect." *See* Fed. R. Civ. P. 6(b)(1)(B). "Excusable neglect is an 'elastic concept' that empowers

---

[5] Defendants' Motion for Summary Judgment was filed on March 10, 2023. Filing 29. This Court's local rules provide that a party opposing a motion for summary judgment has 21 days to submit a responsive brief. *See* NECivR 7.1(b)(1)(B). Therefore, in order for Defendants to have submitted a timely motion to extend the deadline, they needed to do so before the deadline expired on March 31, 2023. Defendants did not submit their Motion to Extend until April 10, 2023. Filing 34.

courts to accept, 'where appropriate, . . . late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.'" *Chorosevic v. MetLife Choices*, 600 F.3d 934, 946 (8th Cir. 2010) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993)). In determining whether a party has demonstrated "excusable neglect" under Rule 6(b)(1)(B), courts consider four factors to be "particularly important." *Chorosevic*, 600 F.3d at 946. These four factors—which derive from the Supreme Court's decision in *Pioneer Inv. Servs.*, 507 U.S. 380—are as follows: (1) the possibility of prejudice to the non-moving party, (2) the length of the delay and the possible impact of that delay on judicial proceedings; (3) the moving party's reasons for delay, including whether the delay was within her reasonable control; and (4) whether the moving party acted in good faith. *Chorosevic*, 600 F.3d at 946; *see also Sugarbaker v. SSM Healthcare*, 187 F.3d 853, 856 (8th Cir. 1999).

Defendants did not address any of these considerations in their Motion. *See generally* Filing 34. That is problematic because the party seeking an untimely extension necessarily bears the burden of establishing that their failure to file a timely extension request was due to excusable neglect. *See Precision of New Hampton, Inc. v. Transtar Indus., Inc.*, No. C14–2067, 2015 WL 12911989, at *1 (N.D. Iowa Nov. 30, 2015) (recognizing that a party who submits an untimely response to a motion for summary judgment "has the burden of showing it failed" to do so "because of 'excusable neglect' and that there is 'good cause' to grant its request for extension of time"); *cf. Noah v. Bond Cold Storage*, 408 F.3d 1043, 1045 (8th Cir. 2005) (explaining that the party attempting to seek relief from a judgment under Federal Rule of Civil Procedure 60(b)(1) failed to demonstrate "that the facts surrounding his failure to comply with the scheduling and trial order or the order to show cause amounted to excusable neglect on his part").

At no point in their 110-word filing do Defendants offer any reason explaining—or even acknowledging—the untimely nature of their Motion. *See generally* Filing 34.[6] To the extent Defendants' Motion is untimely because they initially thought JHP's Motion for Summary Judgment had been filed too late, that does not establish excusable neglect. *See Lowry v. McDonnel Douglas Corp.*, 211 F.3d 457, 464 (8th Cir. 2000) ("inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect") (quoting *Pioneer*, 507 U.S. at 392). Defendants certainly have not suggested that their failure to file a timely extension request was due to a matter beyond their reasonable control. *See Sugarbaker*, 187 F.3d at 856 (recognizing that whether a party's delay was within its reasonable control is to be considered in assessing the reasons for the delay). The Court has no reason to believe so either given that they were able to file their Motion to Deny Plaintiff's Motion for Summary Judgment, Filing 32, within NECivR 7.1(b)(1)(B)'s 21-day window for responding to motions for summary judgment. Defendants could have contemporaneously sought such an extension at that time, but they chose not to do so. Thus, the third *Pioneer* factor weighs firmly against finding excusable neglect.[7]

The remaining *Pioneer* factors do not counteract the weight of the third factor—particularly given that "the reason-for-delay factor will always be critical to the inquiry." *Gibbons*

---

[6] Defendants' claim that they need additional time to examine, research, and properly respond to "the exceedingly large amount of documents attached to Plaintiff's Motion" might speak to Rule 6(b)'s "good cause" requirement, but not its "excusable neglect" requirement. Good cause is always required when requesting an extension, regardless of whether the extension request is timely or untimely. *See* Fed. R. Civ. P. 6(b)(1). Defendants' obligation to demonstrate excusable neglect given the untimeliness of its Motion is separate and distinct from its obligation to establish good cause for why an extension should be granted in the first place.

[7] "In cases where 'the judicial disfavor for default dispositions is not implicated,' courts may focus primarily on the reason for the movant's delay." *Chorosevic*, 600 F.3d at 947 (citation omitted). *Chorosevic* involved a situation where the defendants filed their answers out of time. *Chorosevic*, 600 F.3d at 946. Had the district court not found excusable neglect permitting the answers to be filed out of time, then plaintiffs would have defaulted. *See id.*; Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default"). The present case does not implicate the same concerns regarding default dispositions because unlike failing to file an answer, failing to file a response to a summary judgment motion does not result in default and is not considered a confession of the motion. *See* NECivR 56.1(b)(3); *see also* NECivR 7.1(b)(1)(C).

*v. United States*, 317 F.3d 852, 854 (8th Cir. 2003) (quoting *Lowry*, 211 F.3d at 463). While perhaps minimal, there is still some possible prejudice to JHP given that it already filed a reply brief under the justifiably mistaken impression that Defendants' Motion to Deny Plaintiff's Motion for Summary Judgment, Filing 32, was meant to serve as Defendants' responsive filing to the Summary Judgment Motion rather than an independent, collateral motion. If the Court were to allow Defendants to submit a filing opposing the merits of JHP's Summary Judgment Motion at this late stage, the Court would have to allow JHP an opportunity to submit another reply to that filing as well. Even if the Court were to assume for the sake of argument that this factor weighed in favor of finding excusable neglect, it does so only marginally.

Similar considerations implicate the second *Pioneer* factor—the length of the delay and possible impact of that delay on judicial proceedings. *Gibbons*, 317 F.3d at 854. The Court notes that it began reviewing this matter shortly after it became ripe for adjudication when JHP filed its Reply Brief on April 5, 2023. *See* Filing 34. Without any acknowledgment that their Motion is late, Defendants sought an additional 40 days—nearly double the amount of time they were entitled to at the start on top of the time that expired between the motion for summary judgment and their belated motion for extension of time. *See* Filing 34 at 1; NECivR 7.1(b)(1)(B). Defendants' untimely response has already delayed judicial resolution of the underlying Summary Judgment Motion and has caused the Court to expend valuable time and resources re-writing this Order to address matters that should have been raised well before now. Thus, the second *Pioneer* factor weighs against finding excusable neglect.

The fourth and final *Pioneer* factor—the good faith of the moving party—is difficult to assess given that Defendants have not offered any reason why their request for an extension is untimely. While the Court does not have affirmative evidence that Defendants acted in bad faith

*per se*, it would note that rather than using their allotted 21 days to address the merits of JHP's Summary Judgment Motion, Defendants made the strategic decision to focus solely (and erroneously) on the timeliness of JHP's motion. Once it became apparent that JHP's motion was indeed timely, Defendants ended up being the ones with an untimely motion. In the absence of any explanation on the part of Defendants that would permit this Court to explicitly find they were acting in good faith, this factor does not weigh in favor of finding excusable neglect.

Defendants have not offered any reason explaining why their extension request was filed out of time—the factor with "the greatest import" in the analysis. *See Gibbons*, 317 F.3d at 854. "Notwithstanding the relatively flexible *Pioneer* standard, 'there still must be a satisfactory explanation for the late filing.'" *Id.* at 855 (citation omitted). Therefore, having considered each of the four *Pioneer* factors and affording them the weight they are respectively entitled to under the circumstances, the Court concludes that Defendants have failed to demonstrate excusable neglect as required by Rule 6(b)(1)(B). Defendants' untimely Motion to Extend the Response Deadline to JHP's Summary Judgment Motion, Filing 34, is denied.

### 3. JHP's Properly Referenced Material Facts Will be Considered Admitted for Purposes of Ruling on its Motion for Summary Judgement

Consequently, JHP's Motion for Summary Judgment is effectively unopposed. *See Paskert v. Kemna-ASA Austo Plaza, Inc.*, 950 F.3d 535, 540 (8th Cir. 2020) (noting that a party's "failure to oppose a basis for summary judgment constitutes waiver of that argument") (quoting *Satcher v. Univ. of Arkansas at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009)). This does not mean that Defendants have confessed to the propriety of summary judgment because, as the movant, JHP must still establish that it is "entitled to judgment as a matter of law." *Erickson v. Nationstar Mortg., LLC*, 31 F.4th 1044, 1048 (8th Cir. 2022); *see also* NECivR 56.1(b)(3) ("Failure to file an opposing brief or statement alone is not considered confession of a motion").

However, it does mean that Defendants are precluded from contesting JHP's statement of facts. See NECivR 7.1(b)(1)(C). The Court's local rules on motions for summary judgment are very clear: "<u>Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response</u>." NECivR 56.1(b)(1)(B) (emphasis in original).

Thus, the Court will consider JHP's properly referenced material facts to be admitted by Defendants for purposes of ruling on this Motion to the extent such facts are supported by evidence in the record. *See R.A.D. Servs. LLC v. State Farm Fire & Cas. Co.*, 60 F.4th 408, 412 (8th Cir. 2023) (per curium) (concluding that the district court did not abuse its discretion by striking exhibits filed in violation of the applicable version of NECivR. 56.1 and that without these exhibits "the district court properly accepted the [moving party's] facts as admitted, in accordance with the local rules"); *see also Carter v. Muldoon*, No. 8:17CV319, 2018 WL 10228384, at *1 (D. Neb. Dec. 19, 2018) (treating the defendants' statement of facts as undisputed where the plaintiff "made no attempt to respond to the Defendants' statement of facts in the manner required by NECivR56.1(b)(1)"), *aff'd*, 780 F. App'x 392 (8th Cir. 2019).

With these preliminary matters resolved, the Court turns to the factual background to the summary judgment motion.

### B. Factual Background

JHP "is a commercial licensor of sports and entertainment programming." Filing 29-3 at 2 (¶3). JHP "purchased and retained the commercial distribution rights to broadcasts" of two boxing matches at issue in this suit—*Terrence Crawford vs. Shawn Porter* and *Gervonta Davis vs. Isaac Cruz*. Filing 29-3 at 2 (¶3). *Terrence Crawford vs. Shawn Porter* took place on November 20, 2021, and *Gervonta Davis vs. Isaac Cruz* took place on December 5, 2021. Filing 29-3 at 2 (¶3). The Court will refer to these broadcasts as "the Crawford Event" and the "the Davis Event," respectively. The Court will collectively refer to both broadcasts as "the Events."

JHP "was licensed to exhibit each of the Events at commercial locations, such as bars, restaurants, nightclubs, lounges and other commercial establishments throughout the State of Nebraska." Filing 29-1 at 1 (¶8); Filing 29-4 at 2–14; Filing 29-5 at 2–16. Commercial establishments that contracted with JHP for the rights to broadcast the Events were required to pay JHP "a sublicense fee to receive each of the Events." Filing 29-1 at 2 (¶10); Filing 29-3 at 3–4 (¶¶7–9). These "sublicense fees [were] based on the capacity of the establishment." Filing 29-1 at 2 (¶10); Filing 29-3 at 3 (¶7). For a commercial establishment with a capacity of approximately 60 people, the sublicense fee for the Crawford Event would have been $900.00 and the sublicense fee for the Davis Event would have been $600. Filing 29-1 at 2 (¶10); Filing 29-3 at 3–4 (¶7).

Defendant Cantina El Sol, LLC, "is a Nebraska limited liability company" that operates an establishment in Omaha, Nebraska, called "Don Gaby's Sports Bar" (Don Gaby's). Filing 29-1 at 1 (¶3); Filing 29-20 at 2; Filing 29-13 at 2–5. Defendant Alferes was the sole owner and member of Cantina El Sol, LLC, on the nights of the Events, and maintained both the right and ability to supervise the activities at Don Gaby's on the nights of the Events. Filing 29-1 at 1 (¶4); Filing 29-13 at 2; Filing 29-19 at 1–2. Through posts on Facebook, Alferes advertised that both the Crawford Event and the Davis Event would be available to watch at Don Gaby's. Filing 29-11 at 3–4. Don Gaby's was open for business and offered alcoholic drinks for purchase on the nights of the Events. Filing 29-1 at 2 (¶12); Filing 29-19 at 3–4. Both Events were shown on multiple screens at Don Gaby's. Filing 29-8 at 2–3; Filing 29-9 at 2–9; Filing 29-19 at 4; Filing 29-20 at 3–4. Alferes, in his capacity as owner and manager of Don Gaby's, was personally present at the establishment on both nights and witnessed the broadcasts of the Events. Filing 29-1 at 2 (¶18); Filing 29-19 at 3; Filing 29-20 at 3. However, neither Alferes nor anyone else ever paid JHP "for the commercial

11

exhibition rights to broadcast either of the Events" at Don Gaby's, and JHP never authorized Defendants to exhibit these Events. Filing 29-1 at 3 (¶¶20–21); Filing 29-3 at 3 (¶¶11, 13).

Don Gaby's used "a Cox cable and Cox internet account" on the dates of the Events. Filing 29-1 at 3 (¶28); Filing 29-19 at 5; Filing 29-20 at 3–4 (¶16). The applicable CoxCom, LLC Residential Customer Service Agreement in effect on November 20, 2021 and December 5, 2021 provided that its services were to be used "only for personal, noncommercial purposes and not business activities." Filing 29-1 at 3 (¶29); Filing 29-17 at 12. It also said, "You may not rebroadcast, retransmit, redistribute, perform, or charge admission to view or listen to any of the Cox Services unless you obtain and pay for any applicable public performance licenses." Filing 29-1 at 3–4 (¶29); Filing 29-17 at 12 The Crawford Event was ordered through ESPN+. Filing 29-1 at 3 (¶22); Filing 29-19 at 5. The Davis Event was ordered through Showtime Networks Inc. Filing 29-1 at 3 (¶24); Filing 29-19 at 5–6. Neither the applicable version of the ESPN+ Subscriber Agreement nor the Showtime Terms of Use permitted users to transmit content for commercial use. *See* Filing 29-1 at 3 (¶¶23, 25); Filing 29-15 at 2–5; Filing 29-16 at 2–15. Defendants also "used a Roku device to obtain and exhibit the Events" at Don Gaby's. Filing 29-1 at 3 (¶27); Filing 29-21 at 3, 8–11. Roku's applicable terms of service at the time stated that "Roku products are intended for personal, non-commercial use only." Filing 29-1 at 3 (¶27); Filing 29-18 at 2.

## II.  LEGAL ANALYSIS

### A.  Rule 56 Standards

Pursuant to Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Rusness v. Becker Cnty.*, 31 F.4th 606, 614 (8th Cir. 2022) (quoting *Doe v. Dardanelle Sch. Dist.*, 928 F.3d

722, 725 (8th Cir. 2019), in turn quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The moving party bears the burden of showing the absence of a genuine dispute." *Glover v. Bostrom*, 31 F.4th 601, 603 (8th Cir.) (citing Fed. R. Civ. P. 56(a)), *reh'g denied*, No. 20-2884, 2022 WL 1564097 (8th Cir. May 18, 2022). The party opposing summary judgment must "cit[e] particular materials in the record" or show that the "materials cited do not establish the ... absence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). On a motion for summary judgment, "a district court should 'not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue.'" *Avenoso v. Reliance Standard Life Ins. Co.*, 19 F.4th 1020, 1024 (8th Cir. 2021) (quoting *Great Plains Real Est. Dev., L.L.C. v. Union Cent. Life Ins.*, 536 F.3d 939, 943-44 (8th Cir. 2008)). Instead, the court must view the evidence in the light most favorable to the non-moving party and afford that party all reasonable inferences supported by the evidence. *Grinnell Mut. Reinsurance Co. v. Dingmann Bros. Constr. of Richmond, Inc.*, 34 F.4th 649, 652 (8th Cir. 2022); *Pearson v. Logan Univ.*, 937 F.3d 1119, 1124 (8th Cir. 2019).

### B. JHP's Cable Piracy Claim Pursuant to 47 U.S.C. § 553

*1. JHP's Arguments*

JHP asserts, "it is undisputed that on the dates of the Events, without [JHP's] authorization, Defendants intercepted and/or received or assisted in the interception and/or receipt of the transmissions of the Events, and broadcast or assisted in the broadcast of the Events to the patrons of Defendants' Establishment." Filing 29-2 at 10. Because Defendants used a "Cox cable/internet account to access the internet," JHP contends that "the transmissions were both by aid of cable wire and Defendants have violated 47 U.S.C. § 553 of the Communications Act." Filing 29-2 at 10. With respect to Alferes in particular, JHP argues that because he was the sole owner and manager of Don Gaby's Bar and was also present at Don Gaby's Bar during the broadcasts of the Events, he "had the right and ability to supervise the infringing activity and a direct financial

interest from the infringing activities." Filing 29-2 at 13. Accordingly, JHP argues that Alferes "is individually liable for the underlying Communications Act violations." Filing 29-2 at 13. All told, JHP seeks $3,000.00 in damages plus attorneys' fees and costs. *See* Filing 29-2 at 14–15.

　　*2. Applicable Standards*

　　The Communications Act of 1934, as amended, provides that, "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). The statute also allows for a private right of action to be brought in federal district court by "[a]ny person aggrieved by any violation of" the foregoing subsection. *See* 47 U.S.C. § 553(c)(1). Several courts have concluded that § 553 is a strict liability statute. *Joe Hand Promotions, Inc. v. Peterson*, No. 8:12CV241, 2014 WL 824119, at *4 (D. Neb. Mar. 3, 2014) (citing five such federal district court cases). "It is not necessary for a plaintiff to establish a defendant's 'willfulness.'" *Id.* at *3 (citing 47 U.S.C. § 553(c)(3)(C)). "As a strict liability statute, to prove a violation, [the plaintiff] need only show that the Event was shown in Defendant's establishment without its authorization." *Joe Hand Promotions, Inc. v. Moctezuma Club, Inc.*, No. 3:11-CV-00809-L, 2012 WL 2358254, at *2 (N.D. Tex. June 21, 2012); *accord Joe Hand Promotions, Inc. v. Maupin*, 2016 WL 6459631, at *6 (E.D.N.Y. Oct. 31, 2016) (explaining that as a strict liability statute, "a plaintiff, as exclusive licensee, need only show that the Event was shown in the defendant's establishment without the plaintiff's authorization").

　　Courts may grant injunctive relief, award damages, and "direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 553(c)(2)(A)–(C). The statute prescribes specific means by which damages "shall be computed" in these cases. *See* 47 U.S.C. § 553(c)(3)(A). As one Magistrate Judge in the Eastern District of New York recently summarized,

There are two possible computations that may be used to award damages under 47 U.S.C. § 553. 47 U.S.C. § 553(c)(3)(A). An aggrieved party may either recover (1) "actual damages suffered as a result of the violation and any profits of the violator that are attributable to the violation," or (2) "statutory damages for all violations" in an amount of no less than $250 and no more than $10,000. 47 U.S.C. § 553(c)(3)(A)(i); 47 U.S.C. § 553(c)(3)(A)(ii). Further, a court may increase the award using either computation method by an amount no greater than $50,000 if "the violation was committed willfully and for purposes of commercial advantage or private financial gain." 47 U.S.C. § 553(c)(3)(B). . . . [U]nder § 553 the court also has the discretion to decrease an award of damages where it finds "the violator was not aware" it was violating the statute. 47 U.S.C. § 553(c)(3)(C) ("In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $100.").

*J & J Sports Prods., Inc. v. Belliard*, No. 18CV5088DLIRER, 2022 WL 1748626, at *6 (E.D.N.Y. Jan. 25, 2022); *see also Comcast of Illinois X v. Multi-Vision Elecs., Inc.,* 491 F.3d 938, 942 (8th Cir. 2007) (noting that 47 U.S.C. § 553(c)(3)(B) "authorizes a district court to increase damages by up to $50,000 if it finds that a violation was committed willfully and for purposes of commercial advantage or private financial gain").

3. *Discussion*

a. JHP is Entitled to Summary Judgment on its § 553 Claim and Alferes is Personally Liable

It is undisputed that the Crawford Event and the Davis Event were both shown at Don Gaby's without JHP's authorization. It is also undisputed that JHP was never paid the amount it should have been entitled to in sublicensing fees. "Any unauthorized showing of the Event is a violation of the Communications Act, a strict liability statute. Plaintiff only has to show that broadcast was shown in Defendants' Establishment without its authorization." *Joe Hand Promotions, Inc. v. 152 Bronx, L.P.*, 11 F. Supp. 3d 747, 759 (S.D. Tex. 2014). "Accordingly, the Court concludes that [JHP] has established that the [Events were] unlawfully displayed." *Peterson, 2014* WL 824119, at *3. Defendants also displayed the Events through use of a "cable system." *See* 47 U.S.C. § 553(a)(1). Defendants admitted in discovery that Don Gaby's "ordered and

15

obtained each of the [Events] through a residential cable television account registered to" Don Gaby's address. Filing 29-19 at 3. In Defendants' own words, "Cox provided the cable Wi-Fi service and ESPN and Showtime [provided] the fights." Filing 29-20 at 4–5. For both Events, Defendants used a Roku device that was connected to the internet via this Cox account. *See* Filing 29-21 at 3, 8–11.[8]

It is true that courts have recognized a so-called "safe harbor" provision in 47 U.S.C. § 553(a)(1) "that precludes the imposition of liability on the majority of cable recipients—customers of cable providers." *J&J Sports Prods., Inc. v. Mandell Fam. Ventures, L.L.C.*, 751 F.3d 346, 348 (5th Cir. 2014). "This exclusion constrains the reach of the statute by exempting from liability those individuals who receive authorization from a cable operator[.]" *Id.* However, this exclusion does not apply here because neither Cox, ESPN+, Showtime, nor Roku authorized Defendants to use their products or services for commercial purposes. *See* Filing 29-17 at 12; Filing 29-15 at 2–5; Filing 29-16 at 2–15; Filing 29-18 at 2. Defendants admitted in discovery that Don Gaby's "was a commercial business and not a residential dwelling on the dates" the Events took place. Accordingly, Defendants were not "specifically authorized" by any of these entities to exhibit the Events at a commercial establishment like Don Gaby's. *See J&J Sports Prods., Inc. v. Brewster "2" Café, LLC*, No. 4:11-CV-00690-SWW, 2014 WL 4956501, at *3–4 (E.D. Ark. Oct. 2, 2014) (denying the defendants "safe harbor" and granting the plaintiff summary judgment on its § 553

---

[8] As one district court within the Eighth Circuit observed in a similar case, "it is irrelevant whether the signal . . . was sent over the Internet." *J & J Sports Prods., Inc. v. Vega*, No. 5:15-CV-5199, 2016 WL 4132290, at *4 (W.D. Ark. Aug. 2, 2016). The *Vega* court reasoned that § 553(a)(1) was "explicitly concerned with whether unauthorized communications were sent or received . . . 'over a cable system,'" and "say[s] nothing one way or the other about the Internet[.]" *Id.* The *Vega* court therefore concluded that it would "make no difference" whether a cable system "interacted with or were part of the Internet." *Id.* The *Vega* court acknowledged that some other federal district courts had suggested otherwise, but then made a point of noting "that none of them [were] binding precedent or from within the Eighth Circuit." *Id.* This Court agrees with the *Vega* court's reasoning. *See also Maupin*, 2016 WL 6459631, at *5 ("This Court agrees with the courts that have allowed plaintiffs to proceed under a theory of liability that contemplates interception of communications via the internet").

claim because "Comcast gave no such authorization to [the defendants] as made clear by the Comcast Business Services Customer Terms and Conditions agreement that [the defendants] had with Comcast"); *cf. J & J Sports Prods., Inc. v. Argueta*, No. 5:15-CV-05200, 2017 WL 6016520, at *2 (W.D. Ark. Jan. 9, 2017) (granting summary judgment in the plaintiff's favor on its § 605 claim where the evidence demonstrated that the defendant published a program "according to the price of a residential license when a commercial license was required").

JHP has also demonstrated that Alferes is personally liable for these violations. "To prove vicarious liability in a federal anti-piracy case, Plaintiff need only show that the Defendants (a) had a right and ability to supervise the infringing activities, and (b) an obvious and direct financial interest in the exploitation." *152 Bronx*, 11 F. Supp. 3d at 759 (internal quotation marks omitted); *see also G&G Closed Cir. Events, LLC v. Alamo Card House, LLC*, No. SA-20-CV-01094-XR, 2021 WL 5810558, at *5 (W.D. Tex. Dec. 7, 2021) ("Because of the strict liability nature of the Communications Act, officers, directors, members, and managers are held individually liable for the Communications Act violations under the theory of vicarious liability"). The undisputed evidence in this case established that Alferes was the sole owner and member of Cantina El Sol, LLC, on the nights of the Events. *See* Filing 29-13 at 2; Filing 29-19 at 2. Alferes further admitted in discovery that he was present at Don Gaby's on the nights of the Events, and that he had both the right and the ability to supervise the activities at Don Gaby's on the nights of the Events. Filing 29-19 at 3. There can be no question that Alferes "had an obvious and direct financial interest in the exploitation." *152 Bronx*, 11 F. Supp. 3d at 759. Alferes conceded as much in discovery. *See e.g.*, Filing 29-19 at 7 (Alferes admitting that he "benefited financially from [Don Gaby's] sales on the dates of the [Events]"). Accordingly, Alferes is personally liable for the § 553 violations.

      b.  The Court Awards JHP $1,500.00 in Actual Damages
          Attributable to its Lost Sublicensing Fees

Having found Defendants liable, the Court now turns to the question of damages. JHP

argues that if Defendants had "legally licensed the Events from [JHP], the total licensing fees

would have been $1,500.00." Filing 29-2 at 14. This sum is adequately supported by evidence in

the record, including an affidavit attesting that "if a commercial establishment had a maximum fire

code occupancy of fifty-one (51) to seventy-five (75) persons, the commercial sublicense fee for

[the Crawford Event] would have been $900.00 and the commercial sublicense fee for [the Davis

Event] would have been $600.00." Filing 29-3 at 4–5 (¶7); *see also* Filing 29-6 at 2; Filing 29-7

at 2. Defendants admitted in discovery that the fire code occupancy capacity at Don Gaby's Sports

Bar is "60." Filing 29-20 at 3. Accordingly, the Court awards JHP $1,500.00 in actual damages

based on the $900.00 sublicensing fee they were entitled to for the Crawford Event and the $600.00

sublicensing fee they were entitled to for the Davis Event.

      c.  The Court Will Not Award JHP the Additional $1,500.00 It
          Seeks Based on Revenue It Claims Defendants Received

In addition to the $1,500.00 they are entitled to in lost sublicense fees, JHP also requests

that this Court order an additional $1,500.00 based on "a modest estimate of total revenue" that

Defendants would have received "from the unauthorized exhibits of the Events[.]" Filing 29-2 at

15. While 47 U.S.C. § 553(c)(3)(A)(i) does permit an aggrieved party to recover "any profits of

the violator that are attributable to the violation which are not taken into account in computing the

actual damages[,]" the problem here is that JHP's $1,500.00 request is entirely speculative. *See*

*Multi-Vision*, 491 F.3d at 947 ("Damages 'may not be determined by mere speculation or guess,'

but they may be subject to 'just and reasonable inference, although the result be only

approximate.'"); *cf. Everyday Learning Corp. v. Larson*, 242 F.3d 815, 819 (8th Cir. 2001)

(explaining that even if liability is established through default, a party "must still prove its actual

damages to a reasonable degree of certainty"). In order for an aggrieved party to recover the violator's profits, the aggrieved party "shall be required to prove only the violator's gross revenue, and the violator shall be required to prove his deductible expenses and the elements of profit attributable to factors other than the violation[.]" 47 U.S.C. § 553(c)(3)(A)(i). JHP has provided no evidence regarding Defendants' gross revenue.[9] Accordingly, in the absence of any evidence that substantiates JHP's claim for an additional $1,500.00 beyond the speculative level, the Court will deny JHP's request for $1,500.00 in "additional compensation to account for any revenues gained by Defendants from the proceeds [they received] . . . as a result of their unlawful actions." Filing 29-2 at 14.

### 4. The Court Would Reach the Same Conclusion Even if It Did Consider the Contents of Defendants' Untimely Resistance to Summary Judgment

Although there is no need to address Defendants' untimely Resistance to Summary Judgment for the reasons addressed above, in the interest of being thorough the Court will now explain why it would reach the exact same conclusion even if it were to consider the matters contained in Filing 36 and Filing 37. Defendants belatedly agree with the vast majority of facts JHP included in its statement of material facts. *See* Filing 36 at 5–8 (agreeing with 29 of JHP's 32 paragraphs that were set forth in its statement of material facts). The only "disputed" matters that Defendants raise in their opposition brief pertain to Alferes's knowledge about what rate he was required to pay for the Events, whether Defendants "intercepted" the broadcasts without authority, and whether Alferes benefitted from displaying the Events at Don Gaby's. *See* Filing 36 at 5–6 (¶¶ 9, 11, 19). They do not dispute any other facts asserted by JHP. *See* Filing 36 at 5–8.

---

[9] JHP notes in its brief that Defendants "refused to produce any records, receipts, or documents relating to revenues from the dates of the Events." Filing 29-2 at 14 (citing Filing 29-22 at 3). That may be true, but to the extent JHP believed it was entitled to this information in discovery, the appropriate recourse was to file a motion to compel.

Defendants' contention that these disputes preclude summary judgment evince a misunderstanding of both JHP's position and—more fundamentally—the law. Defendants first contend that "[t]here remain genuine issues of material fact as to whether Defendants violated 47 U.S.C. § 553." Filing 36 at 8. In short, Defendants plead ignorance. They claim that there is no evidence "Defendants ever received any information connecting [JHP] with the right to show the fights" or "that either Showtime or ESPN+ advised Defendants that they would need to pay any additional fee to [JHP] in order to show the fights in Defendants' bar." Filing 36 at 9. This position fails to appreciate the strict liability nature of § 553. *See Peterson*, 2014 WL 824119, at *3; *Moctezuma Club*, 2012 WL 2358254, at *2; *Maupin*, 2016 WL 6459631, at *6.

Defendants also argue that "[t]here remains a genuine issue of material fact as to whether [their] actions were willful and warrant increase [*sic*] damages." Filing 36 at 10. This too misses the mark because JHP has not sought such damages. To be sure, the applicable statute permits courts the discretion to increase an award of actual or statutory damages "by an amount of not more than $50,000" where "the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain[.]" *See* 47 U.S.C. § 553(c)(3)(B). However, JHP has not asked this Court to increase its damages award pursuant to §553(c)(3)(B). Therefore, there is no dispute to resolve when it comes to whether Defendants' "actions were willful and warrant increase[d] damages." Filing 36 at 10.

To the extent Defendants argue that summary judgment is inappropriate because a credibility assessment is needed to determine whether to reduce JHP's damages award pursuant to § 553(c)(3)(C), the Court disagrees. The plain text of the statute firmly commits this decision to the Court's discretion. *See* 47 U.S.C. § 553(c)(3)(C) (stating "the court *in its discretion* may reduce the award of damages . . . by an amount of not more than $50,000) (emphasis added). Even if the

Court were to affirmatively find that Defendants "were not aware and had no reason to believe that [their] acts constituted a violation[,]" the Court would not exercise its statutorily granted discretion to reduce JHP's $1,500 award. This relatively modest sum reflects the actual amount JHP should have been paid in sublicensing fees—nothing more. The Court does not believe that further reduction would be appropriate, and no credibility assessment is necessary to this conclusion.

Finally, Defendants' reliance on the Southern District of Iowa's decision in *Joe Hand Promotions v. Wray*, is misplaced. *See* Filing 36 at 9–10 (citing *Joe Hand Promotions v. Wray*, No. 4:20-CV-00279-SBJ, 2021 WL 6144615 (S.D. Iowa Oct. 27, 2021)). In that case, Joe Hand Promotions sought an additional sum on top of their actual damages based on its claim that the defendants willfully violated the applicable statute. *See id*. at *4 (noting that Joe Hand Promotions sought additional damages in an amount equal to three times their actual damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii)). The *Wray* court declined to grant summary judgment because there were "genuine issues for trial as to whether any asserted violations were committed willfully to warrant an increase in an award of damages under subsection 605(e)(3)(C)(ii)." *Id.* at *5. *Wray* involved the telecast of three pay per view events. *Id.* at *3 However, the bar owner disputed that he was involved "in any way" with the telecast of one of them. *Id.* at *5. As the district court acknowledged, "A fair conclusion might be reached under the summary judgment record that [the defendant] concedes violation of 47 U.S.C. § 605(a) as to the telecasts" of the other two events. *Id.* at *6. However, the Court went on to say that it was "not entirely certain[.]" *Id.* at *6 n.1. It therefore reasoned, "Given the genuine issues which require proceeding to trial, the Court believes it prudent, without undue prejudice to Joe Hand Promotions, to reserve final determination on all matters until submission of trial briefs and presentation of evidence to the Court." *Id.*

This Court does not share the same uncertainty that the district court had in *Wray*. Unlike the bar owner in that case, Alferes does not dispute his personal involvement in the telecast of either Event at Don Gaby's. Nor does he dispute that he was the owner of Don Gaby's, that he had the right and ability to supervise the activities at Don Gaby's on the nights of the Events, and that he was present and witnessed the broadcasts of the Events at Don Gaby's. *See* Filing 29-1 at 2 (¶¶ 16–18); Filing 36 at 6–7 (¶¶ 16–18). Indeed, Defendants submitted an affidavit from Alferes along with their opposition brief wherein Alferes expressly states, "I displayed the pay per view fights which are the subject matter of this litigation at my bar[.]" Filing 36 at 14 (¶3). This case is also easily distinguishable from *Wray* in that JHP is not seeking an award of additional damages based on the allegation that Defendants acted willfully. For these reasons, the Court is not persuaded by Defendants' reliance on *Wray*.[10]

### C.  JHP Shall Advise the Court Whether It Intends to Pursue the Additional $1,500 in Damages Within Seven Days

Because the Court has only granted JHP's Motion for Summary Judgment in part, the Court directs JHP to state whether it intends to further pursue the additional $1,500.00 it sought in damages by proceeding to trial. The Court declined to award this sum because JHP failed to prove it with the requisite degree of proof that was necessary on a motion for summary judgment. However, the Court recognizes it might be possible for JHP to substantiate this sum with adequate proof at trial. Therefore, the Court directs JHP to advise the Court within seven (7) days of the date of this Order as to whether it intends to proceed to trial for the purposes of seeking the additional $1,500.00 this Court has thus far declined to award in damages. If JHP advises the Court that it

---

[10] The Court notes that on April 25, 2023, JHP filed a Motion to Strike Defendants' Brief and Response to Summary Judgment. *See* Filing 38 (moving to strike Filing 36 and Filing 37). The Court's resolution of this matter moots Filing 38.

does intend to pursue this additional $1,500.00 sum, then the Court intends to refer this matter to the detailed magistrate judge to facilitate a potential settlement conference. *See* NECivR 72.1.

### D.  JHP is Permitted 14 Days to Submit a Fee Affidavit to the Extent it Declines to Pursue Additional Damages at Trial

In addition to the amount they seek in damages, JHP also "requests an award of attorneys' fees and costs pursuant to 47 U.S.C. § 553(c)(2)(C)." Filing 29-2 at 15. Specifically, JHP "seeks an award of attorneys' fees and costs for the prosecution of this action through the final summary judgment requested and respectfully requests this Court grant [it] leave to file a fee affidavit within fourteen (14) days after judgment has been entered." Filing 29-2 at 15. Because the governing statute states that a court may "direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails[,]" the Court will allow JHP to file an affidavit detailing their fees and costs after the remainder of this case is resolved or tried. *See* 47 U.S.C. § 553(c)(2)(C).

However, the Court cautions that it has not yet decided whether or to what extent it will award attorneys' fees. *See Brewster "2" Café*, 2014 WL 4956501, at *7 (declining to award attorneys' fees given that such an award "under § 553(c)(2)(C) is not mandatory but is left to the discretion of the court").[11] To the extent JHP declines to pursue additional damages, it shall file its affidavit and any related documents or legal memoranda in support of this affidavit no later than 14 days from the date of this Order. Defendants shall then be afforded 14 days from the date JHP files such an affidavit to submit any response. Both parties are encouraged to support their respective positions on whether or to what extent such fees should be awarded with citations to

---

[11] The Court notes that the statute proscribing "cable piracy" (47 U.S.C. § 553) and the statute proscribing "satellite piracy" (47 U.S.C. § 605) are notably different in this respect. Pursuant to 47 U.S.C. § 553(c)(2)(C), a court "may" award reasonable attorneys' fees to an aggrieved party who prevails. By contrast, 47 U.S.C. § 605 provides that a court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."

legal authority. If JHP communicates to the court that it intends to proceed to a Federal Court trial over $1,500.00, these deadlines do not apply.

### III.    CONCLUSION

For the foregoing reasons, the Court grants JHP's Motion for Summary Judgment in part and denies it in part. Accordingly,

IT IS ORDERED:

1. Defendants' Motion to Deny Plaintiff's Motion for Summary Judgment, Filing 32, is denied;

2. Defendants' Motion to Extend Defendants' Response Deadline, Filing 34, is denied;

3. JHP's Motion to Strike, Filing 38, is denied as moot;

4. JHP's Motion for Summary Judgment, Filing 29, is granted in part and denied in part. The Court awards JHP $1,500.00 in damages;

5. JHP shall advise the Court within seven (7) days whether it intends to pursue the additional $1,500.00 in damages that this Court has thus far denied;

6. The Court defers ruling on JHP's request for attorneys' fees and costs. To the extent that JHP declines to further pursue the additional $1,500.00 in damages that the Court has thus far denied, JHP shall file a fee affidavit and any accompanying legal memoranda and supporting documentation within fourteen (14) days of the date of this Order. Defendants shall then have fourteen (14) days from the date JHP files a fee affidavit to submit any response; and

7. The Court will defer issuing final judgment in this case until after JHP advises whether it intends to pursue additional damages at trial.

Dated this 26th day of April, 2023.

BY THE COURT:

Brian C. Buescher
United States District Judge